UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARGARET DOWLING,

    Plaintiff,

        v.                                                                    Civ. No. 3:19-cv-01170 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security,

     Defendant.


**RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Margaret Dowling's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. §405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding this case for a rehearing. [Doc. #15]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #22]. After careful consideration of the arguments raised by both

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims.  The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines

whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[2] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

    A. **Facts**

Plaintiff filed her DIB application on November 7, 2016, alleging an onset of disability as of May 1, 2005. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On July 17, 2018, a hearing was held before Administrative Law Judge John Aletta ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On August 29, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On March 26, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-nine years old on the alleged onset date. (R. 27). She completed high school and is able to communicate in English, and has past relevant work as a Production Clerk, Customer Service Clerk, and Market Research Analyst. (R. 28). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##15-1; 22-2]. The Court adopts these statements and incorporates them by reference herein.

    B. **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found that Plaintiff had engaged in substantial gainful activity from 2005 through 2010 and 2012 through 2016, since her alleged onset date of May 1, 2005, prohibiting her from qualifying for disability benefits. (R. 17-18). The ALJ found that there has

been continuous 12-month periods during which the claimant did not engage in substantial gainful activity and his ruling addresses these periods. (R. 18). At Step Two, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees, torn meniscus and chondromalacia of the right knee, degenerative disc disease of the cervical and lumbar spine, and right shoulder impingement. (R. 18). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 19-20). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform light work as defined in 20 C.F.R. §404.1567(b) with the following additional limitations: She could occasionally reach overhead with her right arm, frequently reach overhead with her left arm, frequently climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently stoop, and occasionally kneel, crouch and crawl. Additionally, she must avoid concentrated exposure to extreme cold, could not work at unprotected heights, could not turn her head more than 60 degrees to the right or left, and must use a cane for walking over rough or uneven surfaces.

(R. 20).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was able to perform her past relevant work as a Customer Service Clerk, Market Research Analyst, and Production Clerk. (R. 27). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. (R. 27-30). Accordingly, the ALJ determined that Plaintiff was not disabled from May 1, 2005, the alleged onset date, through August 29, 2018, the date of the ALJ's decision. (R. 30).

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

**II.     DISCUSSION**

Plaintiff argues that the ALJ's ruling should be reversed and/or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from *any* of her treating physicians including her treating ophthalmologist, pain management physician, neurosurgeon, orthopedist, rheumatologist and primary care physician. [Doc. #15-2 at 7-17]. The record demonstrates that Plaintiff returned to work after bilateral knee and hip replacement surgeries, cataract surgeries, and bilateral rotator cuff repair surgeries. *Id.* at 7. She also had, among other medical conditions, an ACDF (Anterior Cervical Discectomy Fusion) at C4-5 and C5-6 and treatment for recurrent uveitis. "Each surgery was preceded by continuous medical treatment and medical compliance, testing, imaging, physical therapy, medication, conservative medical management, and objectively documented medical conditions that were consistent with pain, weakness and extreme limitation of motion. *Id.* She argues that the ALJ erred by interpreting the raw medical data and objective diagnostic and clinical findings to formulate Ms. Dowling's function-by-function physical RFC without any functional assessment by her treating physicians. *Id.* at 8 (arguing that a functional assessment is necessary to address Plaintiff's visual impairment); *Id.* at 9-12 (arguing that a functional assessment is necessary to assess Plaintiff's upper extremity and hand impairments); *Id.* at 12-17 (arguing that the ALJ improperly relied on the opinions of the non-examining State agency physicians and that a functional assessment is necessary from her treating neurosurgeon and pain management physician).

The Commissioner admits that there are no medical source statements from Plaintiff's treating doctors but argues there is no error because the ALJ "had sufficient evidence to reach a disability determination" and properly relied on the opinions from the State agency consultants. [Doc. #22-1 at 17]. For the reasons that follow, the Court finds that the ALJ did not fulfill his

duty to develop the record and that remand is warranted to obtain medical source statements from treating physicians and clinicians.

  a. Development of the Record

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." *Walker v. Astrue*, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting *Lewis v. Comm'r of Soc. Sec.,* No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. *See* 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20

C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. *See* 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Pilarski v. Comm'r of Soc. Sec.*, No. 13-CV-6385-FPG, 2014 WL 4923994, at *2 (W.D.N.Y. Sept. 30, 2014)(quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

Here, the ALJ found that plaintiff had the RFC [4]:

> to perform light work[5] as defined in 20 C.F.R. §404.1567(b) with the following additional limitations: She could occasionally reach overhead with her right arm,

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[5] The regulations dictate the physical exertion requirements of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b).

> frequently reach overhead with her left arm, frequently climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently stoop, and occasionally kneel, crouch and crawl. Additionally, she must avoid concentrated exposure to extreme cold, could not work at unprotected heights, could not turn her head more than 60 degrees to the right or left, and must use a cane for walking over rough or uneven surfaces.

(R. 20).

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Hallet v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's

9

medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not the case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about Plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" Plaintiff's degenerative joint disease of the bilateral knees, torn meniscus and chondromalacia of the right knee, degenerative disc disease of the cervical and lumbar spine, and right shoulder impingement. (R. 18).

Here, the ALJ assigned "great weight" to the physical RFC assessments of State agency physicians, Dr. Barbara Coughlin, Dr. Virginia Rittner and Dr. Ateeq Patel. (R. 26, citing Ex. 2A, 4A, 24F). The ALJ's reliance on the assessment by the State Agency physicians is problematic because there is *no* medical opinion from a treating physician and/or specialist addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings. Our Circuit Court holds that "[i]n the absence of supporting expert medical opinion, the ALJ should not engage in his own evaluations of the medical findings." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)(quoting *Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996)). "Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician." *Hallet*, 2012 WL 4371241, at *6. "When the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, 'the general rule is that the Commissioner may not make the connection himself.'" *Kain v. Colvin*, No. 14-CV-650S, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017)(quoting *Englert v. Colvin*, 15-CV-564-FPG, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016)).

10

"Because the ALJ failed to cite to <u>any</u> medical opinion to support his RFC findings, the Court is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

> Where, as here, the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's "determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence." Given Plaintiff's multiple physical and mental impairments, this is not a case where the medical evidence shows "relatively little physical impairment" such that the ALJ "can render a common sense judgment about functional capacity."

*Palascak v. Colvin*, No. 1:11-CV-0592 MAT, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014); *see also Kain*, 2017 WL 2059806, at *3 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(quoting *Englert,* 2016 WL 3745854, at *4; *Alamo v. Berryhill*, No. 3:18-CV-00210 (JCH), 2019 WL 4164759, at *4 (D. Conn. Sept. 3, 2019)("[T]he court finds that remand is required, given the ALJ's failure to seek the additional records from Dr. Kishawi and request medical opinions from any of Alamo's medical sources: the failure to do so resulted in a substantial gap in the record."); *House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings and as a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(internal citation and quotation marks omitted).

Because the record lacks any medical opinion regarding Ms. Dowling's physical ability to complete the activities for light work with limitations as set forth in the RFC. (R. 14). *Martin*

11

*v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017)("Because the ALJ rejected Dr. Finkbeiner's opinion, the record lacks any medical opinion as to Martin's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. *See* 20 C.F.R. §§404.1567(a), 416.967(a).").

      Here, the treatment records contain raw medical data and/or bare medical findings such as medication notes, diagnosis, examination findings, electronic imaging, Plaintiff's reports of pain, and assessments for her Primary Care Physician Dr. Matthew Veismid; Neurosurgeon Dr. Khalid Abbed; Pain Management Specialist Dr. David Levi; Orthopedist Dr. John Keggi; Ophthalmologist Dr. Nia ani Kombo; and Rheumatologist Dr. Richard Roseff and electronic imaging. These specialists developed a treating relationship with Plaintiff and had ample opportunity to observe and examine her. However, none of the treating doctors provided an opinion that relates the medical evidence to what plaintiff can and cannot do functionally. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor.").Nor, have any of Plaintiff's treating sources offered an opinion on her ability to function in a work setting in light of the combination of her physical impairments, ongoing complaints of muscular spasm and the impact of treatment for chronic pain on her ability to function in a work setting. Here, the administrative record demonstrates extensive treatment for pain with Dr. Levi and other clinicians at the Pain and Spine Center from December 2007 through October 2017. (R. Ex. 8F, 14F, 15F, 20F, 21F, 25F) *See Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979) ("It has been established, both in this Circuit and elsewhere, that subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence."); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014)("We previously have acknowledged that a claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible.").

Here, the State agency physicians' opinions are limited to the record as it existed in April and September 2017. *See Ginda v Comm'r of Soc. Sec.,* Civ. No. 3:16-cv-00692 (JAM), ECF No.29, at *3 (D. Conn. Feb. 28, 2017) (Noting that, "[t]he agency's consultative examining physician conducted his assessment in November 2012, and the non-examining reviewers were limited to the record as it existed in April 2013."). After September 2017, treatment records from PA Anderson at Pain & Spine Specialists noted "a lack of bony fusion across the vertebral bodies, with evidence of endplate sclerosis" with "worsening facet arthropathy and neuroforaminal stenosis." (R. 1019). The PA noted that "[t]he recent CT Scan shows a pseudarthrosis," continued complaints of persistent neck pain, paraspinal muscle spasms and treatment with medical marijuana and narcotics. (R. 1020). On October 26, 2017, Plaintiff returned to her neurosurgeon Dr. Abbed for an evaluation. (R. 1370-73). Dr. Abbed, assessment/plan, states in relevant part,

> 61F s/p C4-5 and 5-6 ACDF 9/2016 with some degenerative changes at C6-7 present[] with persistent neck pain unrelieved by physical therapy or injections. Patient offered physiatry consultation while her new medical diagnoses are being worked up including IBS and possible GERD. If she has no improvement or pain unremitting we will consider posterior fusion from C3 to C7 vs T2 with the hope of stabilizing the C6-7 level and preventing worsening of degenerative changes at these levels. Patient and her husband advised this might help with her neck pain if

13

>this is due to motion and resulting neck spasm but duration of neck pain and persistent nature do not make surgical intervention a guarantee in any way of resolution of neck pain. Patient advised again that goal of last surgery was to decompress nerves to alleviate her left arm radicular pain which has resolved.

(R. 1373).

"[W]hen the treatment notes and test results from the claimant's treating physicians do not assess how the claimant's symptoms limit [her] functional capacities, remand is warranted." *Angelico v. Colvin,* Civ. No. 3:15CV00831(SRU)(JGM), ECF No.17 at 33 (D. Conn. Feb. 8, 2017)(alterations, citations and quotation marks omitted).

>The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart,* 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

Because there is <u>no</u> medical source opinion or functional assessment supporting the ALJ's finding that Ms. Dowling can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate. *See House*, 2013 WL 422058, at *4 (citing *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand.)).

On remand, the ALJ should develop the record as necessary to obtain opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a

14

functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record....")(citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand "should employ whichever of these methods are appropriate to fully develop the record as to [Ms. Dowling's] RFC." *Id.*

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. Because the Court has found the ALJ erred in failing to develop the record, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand appropriate to permit the ALJ to develop the record accordingly.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Accordingly, the Court finds that the ALJ did not err in assessing plaintiff's physical RFC and that it is supported by substantial evidence of record.

### III.     CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #15]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #22]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 30th day of April, 2020, at Bridgeport, Connecticut.

   */s/ William I. Garfinkel*
  WILLIAM I. GARFINKEL
  United States Magistrate Judge